Judge Noonan is sort of the last man standing on this. This will be his third visit to this case. And it's courtroom number three and the third floor. I don't know what that means, but I hope it... Three so far. Right. So, good morning, Your Honors. My name is William Weiss. I represent the appellant in this case. Good morning. I'm going to reserve a couple of minutes for rebuttal. I really wanted to focus on a couple of things. And I was worried that the court might have a lot of questions on the Garcetti case. So I can answer questions. A lot of questions on what case? Garcetti v. Ceballos. Oh, yes. Yes, we do. Might. So... Why don't you start there? Okay. Yes. I think in this instance that the Garcetti v. Ceballos case would not preclude plaintiffs or the appellant's claim. I think it's interesting that in my argument about the jury instruction that Judge Walker submitted, the advisory one, he puts as authority there Ceballos v. Garcetti. So I thought there's some sort of more prescient... Interesting. Anyway, you know, we're not suing the employer in this case. That's my first response to that. And the Garcetti v. Ceballos case goes to great lengths to describe the employer's concerns in addition to the employee's concerns and what the employer has to do in terms of being a government entity, what concerns it has in regulating employee speech and how to deal with that. You know, the counsel that was here before me also sued the employer under Title VII. That was dismissed before I came on the case because there was apparently no perfection of the... or getting the right to sue letter. So the employer has been out since 1997 or 1998. So we have the 1983 action against Ms. Gaddini. So supervisory liability can be imposed without a determination of municipal or agency liability. That's why I think that Garcetti would not control on this case. The supervisory liability runs against an individual, and it's based on that individual's personal responsibility for the constitutional violation. It doesn't require proof of an official policy or a custom, that type of thing. Don't the same considerations about maintaining the efficiency of the office apply here? First, I would say this. The efficiency of the office or disruption of the workplace was never raised in this case. It was never an issue. So there was no evidence ever presented of that. Your difficulty, I think, is that we can affirm on any ground that the jury that was there and then, of course, Garcetti came down and really changed the law and made it very clear. I mean, you've got a different ballpark than you've had the other two times because of Garcetti. That's true. That's very true. This case stayed around long enough. Finally, something came out that was pretty scary for us. But I don't know that you'd have the same consideration because under 1983, you're talking about basically another employer, an individual, acting under color of state law. And she's acting under color of state law because the state gives her power to do what she's doing. That's her job. I would argue, like I did in the brief, it's kind of like that astronomical concept of dark mass, you know, in terms of their code of silence and code of justice that, as a custom, exists within the department. Mr. Bonomi broke that code of silence twice. He turned in a supervisor for overtime fraud, which charge was sustained, and then he raised the issue of the improper records. So you have someone who's operating on her own with others there that decide if you report supervisors or other people, you will be punished for that. And so you're not really getting into workplace efficiency or disrupting. What you're having is an individual who is clear can be liable under 1983, conducting her own vendetta and her own kind of rough justice. So we're not going after the employer in this case, and all those concerns that the court discusses concerning the employer and its rights and what it can do and cannot do don't really fit into the specific facts of this case. Ms. Gaddini was sued individually as violating Mr. Bonomi's rights, so it is within the building where the employment occurs. But it's not. Would she be personally responsible for paying any judgment? Possibly. One issue in the court was whether the State of California would pick up her, well, did pick up her defense, but it can and has discretion to pay a judgment of any employee who's sued in this context. But she was the only defendant in the case. That's a discretionary act that's made post-judgment? That's my understanding. Well, some of it necessarily was pre-judgment because the attorney general's office defended her. So in terms of responding to a monetary judgment, that's a discretionary decision made by the State post-judgment? Pardon me. I have to take another quick look at it. Maybe I'll have to save that for rebuttal. I thought it was discretionary. Mr. McMahon will probably know. I know that paying punitive damages is discretionary, and I think that if she requests that they pay a judgment, they have to. But that's an issue of indemnification or protection, which is separate I think from any liability that she would incur under 1983. Well, it relates a little bit to the cross-examination issue. It does. And because of the Garcetti case, I mean, my response was probably inversely proportional to Mr. McMahon's. You know, when he saw that, it was probably irrational exuberance and I had irrational chagrin. And I really had to read that over and over and over again and ponder it. And honestly, it wasn't until just a few days ago looking at this that I realized, you know, we never sued the employer. They're talking about the employer. We're suing an individual. There's got to be some distinction. And we're not trying to allege, and it was never argued or no evidence was presented that there was any sort of policy or custom, you know, official policy or an informal custom, that the way the employer handles these kind of complaints. So that's my argument on Garcetti, that I don't think it would apply in this instance because we're not suing the employer. The employer ---- Garcetti, part of the claim of Garcetti was against individuals, right? Yes, it was. So doesn't your distinction melt away? But when you read this decision, and I've read it over and over, I don't see any mention of that. The entire opinion is in the context of the employer. So if they had made a comment, even just as, you know, gratuitously that, well, you know, the individuals can't be liable as well because they work for the employer, some analysis, that argument might obtain. But I don't see that in the case whatsoever. It's all focused on the employer and what the employer can and cannot do. Honestly, I don't know what happened to Mr. ---- I thought Mr. Garcetti was sued because he was a district attorney and the head of the agency. Just like any agency that gets sued, the head of the agency is always named. There were a couple other individuals, as I was looking at it last night online, but I never did find out what happened to them. So I can only go with what the opinion has in it, and it's only talking about the employer. There's no guidance for a supervisor, you know, with a separate kind of analysis. So my argument is that it wouldn't bar the claim because we're suing Ms. Gaddini for her individual responsibility for a constitutional violation, and that's a different analysis. And maybe if, you know, depending on what happens, this went to the Supreme Court, who knows what that would be. I don't want to predict that. The other thing I wanted to mention was that on the jury ---- the other arguments about the evidence, I'm just going to leave that for whatever's in the brief. I don't think those are, honestly, the strong points on if there were to be a reversal. I think that's more a lawyer thing, like just make sure you've got everything in you think that you might want to argue. But I think the jury instruction issue and the verdict is a more troubling thing to argue because we have a jury instruction submitted by the judge where he, in fact, is quoting the Ninth Circuit, Ceballos v. Garcetti it was called, and it's an incorrect statement of the law because he's asking the jurors to speculate on what the point of the speech was. And the case law in the Ninth Circuit is pretty clear that content is the controlling factor in determining whether there's protected speech. Secondly, in prior decisions of this court, the first one in particular on this case, it was stated that Mr. Bonomi's speech was a matter of public concern. So we have that as law of the case. And then we have the judge ruling on a JMOL prior to going to the jury that it's, as a matter of law, the speech is protected. Then he gives a jury instruction saying, well, what was the point of the speech, and he gives this advisory verdict with interrogatories about the point of the speech. And now he's injected a completely incorrect statement of the law and analysis into the jury. So, you know, Mr. McMahon raised the point, well, we're speculating. Well, maybe so. We don't know what the jury thought. But now they've got two competing things to consider, one correct, one incorrect. Who knows what they did. And because of that uncertainty, I think, in fairness, that would probably warrant reversal because we don't know what they're doing and why are they considering the point of the speech and whether it should have been a grievance. That's already been decided by the court that it's a matter of public concern. The point of the speech is irrelevant now. So I think that, and plus under 39C, I don't understand how when we have a jury trial where a judge has to decide that issue as a matter of law, we now have the same jury who's the fact finder also deciding an issue of law to advise the judge on that had to be decided before it could go to the jury. And Mr. McMahon said, well, it's an issue of law. Therefore, it's not for the jury and they can advise him on it. But I think that's putting the cart before the horse. So that's my argument on that. And I'm going to sit down and save the rest of my time for rebuttal. Thank you. Okay. Thank you. Counsel. Mr. McMahon. Yes. Good morning. May it please the Court. Defendant and appellee Marcia Gaddini asked the Court to affirm the judgment because not only did plaintiff get a fair trial and get an opportunity to present all the evidence that he's been clamoring about for 10 years, but there was no error committed by the trial court. And there is no showing that even if there was error, that it somehow prejudiced the outcome of this trial. I'm troubled by the submission of the jury instruction on an issue which it seems to me is reserved to the Court. Why should that have gone to the jury? Why should the you're talking about the advisory jury verdict opinion. Why was it presented to the jury? It may have been unconventional. But, again, there's been no harm shown or confusion shown to the jury. The only thing that I can come up with by way of explanation was that that was the trial court's attempt to make sure that whatever the outcome was, it was proper. This is the judge who had overseen this case for so many years. And keep in mind there was no action taken with respect to implementing anything from that advisory jury verdict form. That is, it was rendered by the jury and the judge never took any subsequent action upon it. I can only imagine that the judge perhaps was going to take some action and implement the trier of facts opinion about the point of the speech if there had been some other outcome in terms of a damage award against the defendant. That is, if an award had been rendered against a defendant but at the same time the jury had found that the point of the speech was to inherit a purely private grievance, then perhaps the court could have taken some action to balance things and perhaps modify the jury's verdict. Now the question of law, isn't it? Yes. It is a question of law, undeniably. It's not a, as Judge Walker said on the record, a mixed question of law and fact, is it? Well, it may not be a mixed question of law and fact, but it was unsettled even as of the time of trial. And again, it may have been unconventional. This Court had said it was protected, right? Yes. In Bonomi 2, right? In the second appeal? Yes. The Court said in both. Well, in Bonomi 1, they said that it is, does relate to a matter of public concern and it is protected speech. Now, they said that in the context of a summary judgment motion and they explicitly said, okay. Understandable, but is there any finding on this record where the district court said now that all of the evidence has come in, I have a different view of this? The Court didn't say that. The Court in ruling on the judgment, the motion for judgment as a matter of law, noted that the then current standard under Ceballos v. Garcetti was a very inclusive and forgiving one, is what he said. And that he was, the Court was not in a position to state as a matter of law that his speech was not protected. So the Court was really, I think, coming from the other direction in responding to the JMOL to say, look, you haven't defended, you haven't cleared the threshold, there's not enough evidence presented to show that it absolutely was not. And I think the Court, after two appeals, frankly, thought it was a better course to let it go to the jury. And the Judge could have taken corrective action based on what the jury said. In other words, if it's improper to send a question of law to the jury, what corrective action would the judge have taken? I don't understand your argument. First, let me say, this is only speculation, because nothing was done after these verdicts were rendered, that is, nothing was modified. So the only thing that I can conceive of is that if the jury had come back and said on the one hand, yes, we find Gaddini liable for retaliation, she did violate Mr. Bonomi's rights, and we're going to award some damages. And at the same time, they came back with that advisory jury verdict form saying, no, the point of his speech was a purely private grievance in each of these four instances. And I can only imagine that perhaps the Court could have used that information to modify the first the damage award to say, well, you know, the trier of fact has determined that, in fact, the point of his speech was not to air a matter of great public concern, and therefore his speech was not protected. So, and again, nothing like that was done. And, again, there is no evidence that the jury was confused. It may have been unconventional. Well, it seems to me the point of the argument is that the submission of that instruction the jury was confusing to the jury. Well, that's certainly plaintiff's contention, and it's not supported by a single shred of evidence. And, furthermore, taken in the context of the entire trial, the judge was overly inclusive in terms of allowing plaintiffs to bring in new claims or revive old abandoned claims and present them to the jury. And when they rendered their verdict, and including the special verdict form, they were given an opportunity to agree with the judge's assessment that this is protected The judge said explicitly and clearly, and, again, this hasn't been challenged by the plaintiff, explicitly and clearly in the instructions what the law was with respect to a Section 1983 speech claim. Any detailed form, look, it's my responsibility to determine whether or not a speech is protected, and I'm holding that it is. Well, you know, I don't want to be the dead horse here, but it seems to me that's sort of akin to saying, well, and, by the way, jury, what do you think of New York Times v. Sullivan? Do you think that's okay? I mean, it's a question of law that has got to decide what the jury says. It doesn't matter a bit on it. But, again, it's merely an advisory jury verdict form. The Court instructed them to complete their regular verdict form, and then please also advise me, what do you think? What do you think the law is? You mean that was the Court's question? Well, essentially, yeah. Yes. Well, not what do you think the law is. It wasn't asking him, do you think this is your job or my job? He was saying, I would like to be advised by you, the trier of fact, you, the people who heard all the witnesses, accepted all the evidence and testimony, what do you think was the point of his speech? And, you know, I think this brings up another important point, that every single one of Bonomi's claims was discredited or debunked at trial. Every single one of them, including this idea that his speech did pertain to some matter of public concern. It became very clear when Mr. Bonomi, the plaintiff himself, testified that the point of his speech was to air a private grievance. That is, he was responding to some criticism of his workload. He was criticized for having sloppy recordkeeping. He was responding saying, this is unfair, I shouldn't be criticized because it's the predecessor agent whose sloppy records I inherited, that's why my caseload is in disarray. He said this repeatedly. It's clear in the record. And other witnesses came forward to say, you know, Mr. Bonomi may have told that to me, I don't really recall, but it was in the context of explaining his poor performance and asking for a break. And I think that, well, I don't think the record is clear, that every person who he supposedly told this to, and now we're talking about a regional district administrator in the Department of Corrections Parole Division, we're talking about Mr. Bonomi's direct supervisor, and we're talking about the defendant, Ms. Gaddini, who was in the chain of command between those two, none of those three people reacted as if Mr. Bonomi had told them something of great public concern. That is, Mr. Bonomi claims, oh, well, I complained that there were dangerous felons running around and that this was creating a bad situation. That was the claim he made two or three years after this lawsuit was filed. So at the time the speech was made, it's clear from Mr. Bonomi's behavior and the people he told him that the only message in his speech was an explanation, hey, this isn't fair. These records, they're not my problem. They were someone else's. Nobody reacted by saying, gosh, dangerous felons, let's go, you know, start a manhunt and let's take care of this. And this was all fine with Mr. Bonomi. Mr. Bonomi has never claimed that, well, I made this speech and I raised matters of public concern and management never did anything about it. That's never been a statement made here. So, again, in the whole context of the evidence received at trial, it really was clear to the court and to the jury that the point of Mr. Bonomi's speech was that it was just to air a purely private grievance. Again, it may have been unconventional to propose this jury instruction, but keep in mind also the jurors are not aware of the finer points of Section 1983 law. They don't know the elements the way that the attorneys and the judge might. So there just no evidence to support the idea that when the judge on the one hand said, yes, this is protected speech, there's no evidence to show that the jury knew what elements had been met. And so they didn't know when the judge then issued the advisory verdict for him saying, please tell me, what was the point of Bonomi's speech? There's no evidence and it's inconceivable that the jury sat around and discussed this saying, well, gosh, the judge has already said the elements were met, and yet he's presenting us with a question regarding one of those elements. We must be confused. What's the point of this? I think that's just much too much of a stretch. We, again, we had a jury trial that Mr. Bonomi had wanted through these many appeals. He got ample time to present more evidence than he really should have been permitted to, and that was to the defendant's prejudice. He was allowed to revive claims to speech that had been abandoned long ago. He was able to twist the facts, and none of it worked. It did not convince the jury. And you cannot pin that upon this simple advisory verdict form. Now, with respect to Ms. Gaddini and her response, sorry. Have you ever seen, because I certainly haven't, the use of an advisory jury special interrogatory in a civil damage case? I have not. I haven't done a lot of trials, but I hadn't run across it as far as I can tell. They're more commonly employed by judges in criminal cases seeking advice on sentencing. Well, there certainly are places for it in the civil litigation system, for example, where a case sounds in both equity and law, specific performance, something like that, where an advisory jury is perfectly appropriate. I just can't think I've litigated for 25 years principally in civil litigation, never saw an instance like this where an advisory jury special interrogatory was questioned, was presented to a jury. I just have never seen it before. Well, it's almost like in a criminal case asking the jury, was the defendant in custody for Miranda purposes? I've made the determination that he was or he was not, but I'd sure like to hear from your folks and have you tell me whether you think he was or he was not. It's just, it's a round peg in a square hole. That may be. But again, I've found nothing in plaintiff's sites to nothing that would prohibit the judge employing this advisory verdict for him in this situation. Well, sure, though. I mean, if you're entitled to, you have a Seventh Amendment right to a jury on an issue, you can't use an advisory jury. You have to use a real jury. And if it's a question of law, it's to be decided by the court. Now, one can say in the case, for example, Judge Hawkins mentioned the case where there's a mixed question of law and equity. Maybe it's a mortgage foreclosure and a counterclaim. And one of the affirmative defenses to the equitable action may be factual. You certainly can use an advisory jury to determine the facts or at least help the judge determine the facts so that there's a consistency between the counterclaim resolution and the foreclosure. But this seems pretty odd to me. And your response is it's odd, but it's not wrong. My response is it's unconventional. There's no prejudice that's been shown. And there's also, it's never been shown. I'm sorry? How would you show prejudice? Well, I suppose in this case, the plaintiff could have done some due diligence and spoken with the jury, gotten affidavits from them. But it's not permitted to in Federal court. You mean post-trial? Yeah. I'm sorry, Your Honor. I wasn't, Justice, I was not aware of that. So what could he show? Okay. So tell me what else he could have done to prove prejudice. You mean to show that this advisory juridic form somehow prejudiced his case? Yeah. Nothing comes to mind at this moment. However, again, taken in the whole context of the evidence that was presented and the opportunities he had to present more than the claims that were litigated in the course of the case, he had more than a fair opportunity in this case to get the jury verdict that he wanted. Well, what about Rule 39C? I mean, how do you respond to that? Question again, please. Rule 39C, which basically says, in all actions not triable by right of jury, the court upon motion may try an issue with an advisory jury. But it restricts it to those that are actions not triable by right of jury. And this was an action tried subject to the Seventh Amendment. Yes. So, I mean, 39C would seem to say you can't use an advisory jury when you have a right to a jury trial. Well, but, again, I draw that analogy with a criminal case. A criminal defendant has a right to jury by trial, I mean, a trial by jury, and yet the court will employ it. Sometimes it is a jury by trial. The only last thing I wanted to say is Marcia Guadagni was not a figurehead here for the Department. She's the only person sued. She was accused of constitutional violations. She would have been on the hook for damages if they had been awarded. Unless the State chose to indemnify her. If the State chose to indemnify her. And that was not a settled question even at the time of trial. It wouldn't be settled until the jury came back. If a jury came back and said that she did, in fact, violate his rights and took these adverse actions against him for illegitimate reasons, the State was fully entitled to not indemnify her. And, in fact, there's a California Supreme Court case in which they say that even if it was a sexual harassment case where the harassment took place at work, it involved coworkers, and the State was not required to indemnify and pay those damages because that kind of activity on the part of the defendant did not happen within the scope of employment. You know, intentional constitutional violations are not within the scope of employment. So that would have been the case here. There was absolutely no indication that Marcia Guadagni was going to be indemnified. There was no evidence, and so it would have been improper to have given that instruction. Okay. We're over your time, but we appreciate the argument. All right. Thank you. Rebuttal? Your Honor, I don't know if the Court has any questions. I'm just going to submit the matter on my argument. I don't see any. Thank you both for your arguments. The case just argued will be submitted for decision, and the Court will stand at recess for the day. All rise. Please stand for the session. Thank you.
judges: Noonan, Hawkins, Thomas